UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
CURTIS HINDS,                            :  12 Civ. 2272 (LTS) (JCF)
                                         :
              Petitioner,                :       REPORT AND
                                         :       <u>RECOMMENDATION</u>
                                         :
      - against -                        :
                                         :
ROBERT F. CUNNINGHAM,                    :
                                         :
              Respondent.                :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LAURA T. SWAIN, U.S.D.J.:

      Curtis Hinds, proceeding <u>pro se</u>, seeks a writ of habeas corpus
under 28 U.S.C. § 2254, challenging his 2006 conviction in New York
State Supreme Court, New York County.   Mr. Hinds was convicted
following a jury trial of four counts of second-degree robbery,
seven counts of third-degree grand larceny, seven counts of second-
degree forgery, eight counts of second-degree criminal possession
of a forged instrument, six counts of first-degree identity theft,
and one count of first-degree scheme to defraud.   He contends that
his conviction should be vacated because: (1) venue in New York
County was improper for twenty-six counts of the indictment; (2)
the prosecution's "apparent" introduction of uncharged crimes to
the grand jury impaired the integrity of the proceeding; (3) he was
denied a "full and fair" opportunity to litigate his Fourth
Amendment claim; and (4) the sentence imposed improperly penalized
him for exercising his Sixth Amendment right to a jury trial and
was unduly harsh.[1]   He has also applied for a stay of his petition

---

      [1] In order to give this <u>pro se</u> petitioner the benefit of any
doubt, I am construing his petition to incorporate the arguments

1

while he pursues a writ of error coram nobis in state court challenging the effectiveness of his appellate counsel for failing to raise a claim of ineffective assistance of trial counsel.  For the reasons that follow, I recommend that the application for a stay be denied and the petition be dismissed.

Background

A.   The Crime

Between April and May 2005, women purporting to be Eve Wadworth, Justine Collins, Miledy Mateo, Anna Gaffrey, and Maria Almodovar opened bank accounts at Commerce Bank ("Commerce") using Virginia driver's licenses, Verizon phone bills, and other identifying information. (Trial Transcript dated Sept. 11, 2006 to Oct. 6, 2006 ("Trial Tr."), attached as Exhs. 3-8 to Gill Decl., at 128-130, 83-85, 143-45, 171-73, 162-64).  Tax refund checks were then deposited into the accounts.  (Trial Tr. at 86-87, 147-48, 164-66).  Subsequently, the accounts were linked to the existing accounts of John Gravallas, Yan Sorin, Eugene Zabolotsky, Irina Krivonos, and Alla Zabolotsky, respectively, and money was transferred from the existing accounts into the newly created accounts. (Trial Tr. at 134-36, 91-93, 96-97, 146-49, 175-78, 166-67).  In total, $223,300 was transferred out of the existing accounts into the newly created accounts.  (Trial Tr. at 264).  From the newly created accounts, money was withdrawn and debit

---

contained in his brief on direct appeal to the Appellate Division, First Department.  (Brief for Defendant-Appellant ("Pet. App. Br."), attached as Exh. A to Declaration of Alyson J. Gill dated Dec. 14, 2012 ("Gill Decl.")).

purchases were made.  (Trial Tr. at 136-39, 98-103, 176-78).

In October 2005, business checking accounts in the name of Warren Kremer Paino Advertising linked to personal checking accounts in the names of Elaine Thomas and Elyse Kiraldy were opened at Commerce and at Washington Mutual Bank ("WaMu").  (Trial Tr. at 201-06, 1049, 1056-57).  Checks from Delta Dental made out to Warren Kremer Paino Advertising, totaling $804,720.20, were then deposited into the newly created business accounts.  (Trial Tr. at 207-09, 1060-62).  Subsequently, money was withdrawn and debit purchases and wire transfers were made from these accounts.  (Trial Tr. at 207-16, 1062-71).

B.   Search Warrants and Arrest

On November 28, 2005, the Honorable Deborah Kaplan issued warrants to search the apartments and cars of Mr. Hinds and his co-defendant, Gilbert St. Rose, based on an affidavit by Detective Robert Muldoon summarizing his investigation.  (Affidavit in Support of Search Warrant ("Search Warrant Aff."), attached as Exh. H to Gill Decl.).  The warrants were executed the next day, and Mr. Hinds was arrested.  (Trial Tr. at 1664, 1670).  Among the items recovered from Mr. Hinds' residence were: mail, identification documents, bank cards, and bank documents in the names of the recently opened accounts (Trial Tr. at 2806-10, 2820-22, 2825-26); a cell phone containing the tax-identification number used to establish the business accounts (Trial Tr. at 2817-18); social security cards (Trial Tr. at 2826); Ohio and Virginia driver's licenses (Trial Tr. at 2827); and passport photographs (Trial Tr.

3

at 2830-31).  In addition, computers, scanners, color printers, a
software program that alters scanned images, a laminator, blank
plastic white cards, and a shredder were seized from the apartment.
(Trial Tr. at 3832).  On the computers were, among other things,
Verizon bills used to open the fraudulent bank accounts (Trial Tr.
at 2825), social security cards (Trial Tr. at 2826), and
photographs of four women involved in creating the fraudulent
accounts (Trial Tr. at 2828, 2831).  On the printer ribbons were
images of Ohio and Virginia driver's licenses.  (Trial Tr. at 2831-
32).  A cell phone was seized from Mr. Hinds' car.  (Trial Tr. at
1787-92, 1953).

C.   Procedural History

1.   Grand Jury

During the grand jury proceeding, Nabela Abed testified about
the conduct of the petitioner and Mr. St. Rose "prior to the time
period charged in the indictment."  (Brief for Respondent ("Resp.
App. Br."), attached as Exh. B to Gill Decl., at 76).[2]  Ms. Abed
testified that between February and April 2004, at the direction of
Mr. Hinds and Mr. St. Rose, she opened bank accounts in other

_____

[2] It does not appear that the petitioner received a copy of
the grand jury minutes.  On April 9, 2009, the Appellate Division,
First Department granted Mr. St. Rose's motion to unseal the grand
jury minutes to the extent that the prosecution was ordered to
provide a copy of the minutes to the court under seal.  (Resp. App.
Br. at 80 & n.22).  Moreover, on direct appeal, the respondent
argued that Mr. Hinds should have known that Ms. Abed testified at
the grand jury about these uncharged crimes prior to the jury
verdict because he had the search warrant affidavit and the
prosecution's motion to introduce evidence of uncharged crimes, as
well as because the prosecution moved to call Ms. Abed as a
rebuttal witness.  (Resp. App. Br. at 78-79 n.21).

4

women's names throughout the city with forged documents provided to her by them. (Resp. App. Br. at 81). She also withdrew "several thousand" dollars from the accounts at their behest and gave them the money. (Resp. App. Br. at 81).

On November 29, 2005, the grand jury indicted Mr. Hinds and Mr. St. Rose on one count of first-degree grand larceny, four counts of second-degree grand larceny, seven counts of third-degree grand larceny, ten counts of second-degree criminal possession of a forged instrument, six counts of first-degree identity theft, seven counts of first-degree falsification of business records, seven counts of second-degree forgery, and one count of first-degree scheme to defraud. (Indictment Number 5958-2005, attached as Exh. I to Gill Decl.).

Prior to trial, counsel for Mr. Hinds filed an omnibus motion, requesting, among other things, that the court inspect the evidence before the grand jury and dismiss the indictment for insufficiency. (Pet. App. Br. at 50). The court dismissed one count of the indictment for insufficient evidence but denied the motion in all other respects. (Pet. App. Br. at 50; Resp. App. Br. at 3 n.1). The court noted that although the prosecution "relied on testimony of an accomplice, [and] the prosecutor did not instruct the grand jury on the corroboration requirement," "ample" corroborating evidence was introduced, obviating any prejudice to the petitioner. (Pet. App. Br. at 50).

   2.   Pretrial Suppression Motions

Prior to trial, defense counsel filed a motion to controvert

5

the affidavit in support of the search warrants and suppress the evidence seized from Mr. Hinds' apartment and car. (Pet. App. Br. at 59-60; Resp. App. Br. at 91).   On July 12, 2006, the court denied the motion.   (Pet. App. Br. at 60; Resp. App. Br. at 92). Subsequently, defense counsel received an unredacted copy of the search warrant application and moved to reargue his suppression motion (Pet. App. Br. at 60-61 & n.26; Resp. App. Br. at 92), which the court denied as untimely (Resp. App. Br. at 93).

      3.  <u>Trial</u>

The petitioner and Mr. St. Rose were tried together.   The prosecution called forty-four witnesses.   The five people who purportedly opened Commerce accounts in April and May of 2005 testified that they had never opened an account with Commerce, had not authorized anyone to do so, and had not authorized anyone to use their identifying information.   (Trial Tr. at 2306-12 (Eve Wadsworth), 569-77 (Justine Collins), 587-98 (Miledy Mateo), 1184-87 (Anna Ganffney), 603-09 (Maria Almodovar)).   The existing Commerce customers whose accounts were linked to the newly created accounts testified that they had neither linked their accounts nor authorized money to be transferred from their accounts into the newly-created accounts.   (Trial Tr. at 478-85 (John Gravallas), 1171-76 (Yan Sorin), 434-40 (Eugene Zabolotsky), 419-26 (Irina Krivonos), 449-53 (Alla Zabolotsky)).   The chief financial officer of the advertising company Warren Kramer Paino testified that his company did not maintain a business account with Commerce or WaMu, did not receive checks from Delta Dental in October 2005 for

services it provided, and did not authorize the petitioner or Mr. St. Rose to deposit checks from Delta Dental; indeed, the witness did not know anyone named Elaine Thomas or Elyse Kirkaldy. (Trial Tr. at 2359, 2362, 2354-57). An executive with Delta Dental testified that his company mailed three checks to Warren Kremer Paino in September 2005 but later learned that Warren Kremer Paino did not receive them although the checks had cleared. (Trial Tr. at 463-71).

Antoneta Johnson testified for the prosecution pursuant to a cooperation agreement with the New York County District Attorney's Office. (Trial Tr. at 1323-27).[3] She testified that she was recruited by "Curt" and "G," whom she identified in court as Mr. Hinds and Mr. St. Rose (Trial Tr. at 1327), to file tax returns under other people's names using false documentation that they had provided in order to obtain tax refund checks (Trial Tr. at 1332-35, 1347-51). They then had her open bank accounts in the names of Justine Collins, Eve Wadsworth, Miledy Mateo, and Maria Almodovar with false identification documents. (Trial Tr. at 1353-63). Once the accounts were opened, she deposited tax refund checks into the accounts, added people to the accounts (Trial Tr. at 1364-68), and withdrew money from the accounts (Trial Tr. at 1368-70).

Surveillance videos were also introduced showing the

---

[3] Ms. Johnson was arrested on July 11, 2005, at a Commerce branch when she attempted to withdraw money as Cheryl Clunis. (Trial Tr. at 1381-85, 1395-96). She was indicted for thirty-seven counts of identity theft and bank fraud related to the petitioner's case and had pled guilty to one count of second-degree larceny prior to trial. (Trial Tr. at 1323).

petitioner and Mr. St. Rose accompanying a woman paying for rooms at a hotel in Miami using one of the fraudulently created bank cards (Trial Tr. at 629-41); showing the petitioner, Mr. St. Rose, and a woman paying for merchandise at Circuit City with a fraudulently created bank card (Trial Tr. at 1128-29, 1135-49); and showing the petitioner entering an ATM and transferring money between the fraudulently created accounts (Trial Tr. at 97-98, 126, 379-80). A salesman from Kinetics jewelry store testified that Mr. Hinds, Mr. St. Rose, and a female ordered $115,300 worth of jewelry, which they paid for in installments using debit cards and wire transfers from the fraudulently created accounts. (Trial Tr. at 787-800, 802). The prosecution also introduced and presented evidence regarding items seized from Mr. Hinds' and Mr. St. Rose's residences and cars (Trial Tr. at 818-30, 850, 869-79, 1728, 1736, 1768-76, 1787-88, 1794-98, 1827-35, 1844-51, 1853, 1951-53, 1958-59, 1965-68, 1973-78, 1985-95, 2113, 2126-27, 2257-72, 2276-92), including cell phones used to access account information of the newly created accounts (Trial Tr. at 2419-28).

### b. Defense Case

The defense presented four witnesses, including Mr. Hinds. The petitioner denied committing any fraud or theft involving Commerce or stealing any checks. (Trial Tr. at 2633-34, 2681-82). Among other things, he claimed that he used the computers, printers, and other items found in his apartment to make fake documents and identification cards which he sold to others. (Trial Tr. at 2626-28). He also testified that some of the evidence

8

seized from his apartment was planted there by the police. (Trial Tr. at 2654-55, 2672-73).

              c.   <u>Motions During Trial</u>

During trial, defense counsel renewed a motion to dismiss the indictment on the grounds that Ms. Johnson did not testify before the grand jury and that there was nothing in the grand jury minutes that connected Mr. Hinds and Mr. St. Rose to the crimes alleged in the indictment; the trial court denied the motion. (Trial Tr. at 1527-29). At the close of evidence, defense counsel renewed the motion to dismiss the indictment, and it was again denied. (Trial Tr. at 2730).

Defense counsel also moved to dismiss all counts of the indictment involving bank accounts opened in Brooklyn for lack of jurisdiction. (Trial Tr. at 2492-94, 2501). The prosecution argued that although accounts were opened in Brooklyn, there was a substantial amount of activity that occurred in Manhattan. (Trial Tr. at 2496-97). The court denied the motion, explaining that many of the charges in the indictment were covered under New York Criminal Procedure Law ("C.P.L.") § 20.40(4)(l) which allows identity theft to be prosecuted in any county where part of the offense took place or where the victim resided. (Trial Tr. at 2501-02).[4]

_____

[4] C.P.L. § 20.40(4)(l) provides that jurisdiction for "[a]n offense of identity theft or unlawful possession of personal identifying information and all criminal acts committed as part of the same criminal transaction" is proper "in any county in which part of the offense took place[,] . . . the person who suffers financial loss resided[, or]. . . where the person whose personal identifying information was used in the commission of the offense

4.   <u>Conviction and Sentence</u>

The jury convicted Mr. Hinds and Mr. St. Rose on all thirty-four counts of the indictment.  (Trial Tr. at 3020-26, 3027-33).[5]

On November 2, 2006, prior to sentencing, defense counsel renewed his motion to dismiss based upon the insufficiency of the grand jury minutes on the grounds that Ms. Abed testified about crimes with which the petitioner was not charged.  (Sentencing Transcript dated Nov. 2, 2006 ("Sent. Tr."), attached as part of Exh. 8 to Gill Decl., at 3-5).  The court denied this motion.  (Sent. Tr. at 7).

At sentencing, defense counsel informed the court that Mr. Hinds had been offered a plea deal of four to twelve years.  (Sent. Tr. at 21).  He requested that the court "not [] punish [Mr. Hinds] for the fact that he went to trial and give him more time, but to impose the sentence that was offered to him prior to going to trial."  (Sent. Tr. at 21).  Mr. Hinds also made the same request to the court.  (Trial Tr. at 21-22).  The court hypothesized that the prosecution had offered a lenient plea deal because of the complexity of the case going to trial, which required numerous witnesses to be secured from outside the jurisdiction.  (Sent. Tr. at 22-23).  The court also noted that Mr. Hinds lied on the stand, that he lied about his prior convictions at sentencing, that many

---

resided."  N.Y. Crim. Proc. L. § 20.40(4)(l).

[5] During trial, the prosecution withdrew all seven counts of first-degree falsification of business records (Trial Tr. at 1746), and one count of second-degree possession of a forged instrument (Trial Tr. at 2885-86).

people were victimized, and that the petitioner showed no remorse. (Sent. Tr. at 23-24). The court then sentenced Mr. Hinds to 8 1/3 to 25 years for first-degree grand larceny and 1 1/3 to 4 years for first-degree scheme to defraud to run concurrently with each other and petitioner's other sentences. (Sent. Tr. at 24-26). The court imposed sentences of 5 to 15 years for each second-degree grand larceny and 2 1/3 to 7 years for each third-degree grand larceny, forgery, identity theft, and possession of a forged instrument. (Sent. Tr. at 24-26). The court divided the counts into three groups of sentences with each group running concurrently with the other two. (Sent. Tr. at 25-26). In total, Mr. Hinds was sentenced to a prison term of 10 to 25 years. (Pet. App. Br. at 24; Resp. App. Br. at 1).

     5. <u>Direct Appeal</u>

The petitioner, through counsel, appealed his conviction to the Appellate Division, First Department, claiming that (1) the aggregation of the amounts stolen in six separate larcenies to meet the million dollar statutory threshold for first-degree grand larceny violated due process and common law principles; (2) the prosecution failed to establish venue in New York County for twenty-six counts of the indictment; (3) the integrity of the grand jury proceeding was compromised by the "apparent" introduction of uncharged crimes allegedly committed by the petitioner more than a year before the charges in the indictment; (4) the police lacked probable cause to search his home and car; and (5) the sentence was punishment for going to trial and was unduly harsh. (Pet. App. Br.

at 21-73).   On October 12, 2010, the Appellate Division modified Mr. Hind's conviction by vacating his conviction for first-degree larceny and dismissing that count, holding that since the larcenies were not committed pursuant to a single intent and a common fraudulent plan, aggregation of the amounts stolen was inappropriate.   People v. Hinds, 77 A.D.3d 429, 430, 908 N.Y.S.2d 397, 399 (1st Dep't 2010).   As to the petitioner's venue claim, the Appellate Division held that this claim was waived because he had not requested a jury instruction on the issue.   Id. at 430-31, 908 N.Y.S.2d at 400.   The Appellate Division rejected his remaining claims and found no basis for reducing the sentences on the remaining convictions.   Id. at 431, 908 N.Y.S.2d at 400.[6]

Mr. Hinds then sought leave to appeal to the New York Court of Appeals on all the issues raised in the Appellate Division other than the aggregation issue.   (Letter of Susan H. Salomon dated Nov. 2, 2010, attached as Exh. E to Gill Decl.; Letter of Susan H. Salomon dated Nov. 23 ("11/23/10 Letter Application"), attached as Exh. F to Gill Decl.).   His application was denied on December 30, 2010.   People v. Hinds, 15 N.Y.3d 953, 917 N.Y.S.2d 113 (2010).[7]

---

[6] The petitioner states that his sentence was modified to 10 to 20 years on direct appeal.   (Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet."), at 2). The respondent acknowledges that according to the Department of Corrections and Community Supervision the petitioner is currently serving a sentence of 10 to 20 years.   (Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Resp. Memo."), at 29).

[7] The petitioner filed a C.P.L. § 440.20 motion on December 6, 2010, raising discovery and Rosario claims, which was denied in March 2007.   (Pet. at 4; Resp. Memo. at 31 n.6).

6.   Federal Habeas Corpus

On March 23, 2012, Mr. Hinds filed the instant petition, which the respondent acknowledges is timely. (Resp. Memo. at 31-32). He advances four grounds for overturning his conviction and also requests a stay of his petition while he pursues a writ of error coram nobis in state court to challenge the effectiveness of his appellate counsel. (Pet.; Letter of Curtis Hinds dated March 6, 2012 ("Stay Letter"), attached to Pet.).

7.   Motion for Writ of Error Coram Nobis in State Court

After filing his federal habeas petition, Mr. Hinds moved for a writ of error coram nobis in the Appellate Division, arguing ineffective assistance of appellate counsel. He claimed that his attorney should have argued on appeal that trial counsel was constitutionally ineffective because he waived venue and failed to seek dismissal of the indictment for lack of jurisdiction prior to trial. (Pet. at 5; Resp. Memo. at 31 n.6). On October 25, 2012, the Appellate Division denied the motion. People v. Hinds, Motion No. M-3735, 2012 N.Y. Slip Op. 88698(U), 2012 WL 5258912 (1st Dep't Oct. 25, 2012).

Discussion

A.   Application for a Stay

1.   Standard for Stay and Abeyance

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Supreme Court held that district courts may not rule on so-called "mixed petitions," which contain both exhausted and unexhausted claims; instead, courts

13

should dismiss such petitions without prejudice to allow the petitioner the opportunity to return to state court to present unexhausted claims.  Rose v. Lundy, 455 U.S. 509, 518-19. Subsequently, the AEDPA preserved this total exhaustion requirement, 28 U.S.C. § 2254(b)(1)(A), and also imposed a one-year limitations period for filing federal habeas petitions, 28 U.S.C. § 2244(d)(1).  Given this time restriction, dismissal of a habeas petition, regardless of whether it is with or without prejudice, can now cost a petitioner the opportunity to have a federal court hear any of his claims.

To avoid this result, some courts have chosen to stay habeas petitions containing exhausted and unexhausted claims and hold them in abeyance while the petitioner exhausts claims not previously presented to state courts.  Rhines v. Weber, 544 U.S. 269, 275 (2005).  The Supreme Court has explained that such a stay should only be granted "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Id. at 278.  The Supreme Court noted that in keeping with the purposes of AEDPA, "stay and abeyance should be available only in limited circumstances."  Id. at 277.

Mr. Hinds has requested this Court to stay his petition and hold it in abeyance so that he can exhaust his ineffective assistance of appellate counsel claims in state court.  (Pet. at 5; 03/06/12 Letter).  Since his request, he has filed a motion for a writ of error coram nobis in the Appellate Division, and that

14

motion was denied.  Hinds, 2012 WL 5258912.  It does not appear that he has sought leave to appeal the Appellate Division's denial to the New York Court of Appeals, and the time for seeking leave has expired.  See C.P.L. § 460.10(5)(a).  Therefore, his request for a stay is now moot.

B.    Federal Habeas Corpus Standard

A federal court may grant a writ of habeas corpus to a state prisoner only where the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal law is "clearly established" when it is expressed in "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions."  Howes v. Fields, __ U.S. __, __, 132 S. Ct. 1181, 1187 (2012) (internal quotation marks omitted).  A state court's decision is "contrary" to clearly established federal law when the state court "applies a rule that contradicts the governing law set forth in" a Supreme Court opinion or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court's decision is "unreasonable" when the decision is "more than incorrect or erroneous" and is "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  It is a standard that is "difficult to meet"; habeas relief should be granted only where

there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, __ U.S.__, __, 131 S. Ct. 770, 786 (2011).  Notwithstanding this deferential standard, federal courts must independently evaluate whether a constitutional violation has occurred.  Wright v. West, 505 U.S. 277, 305 (1992) (O'Connor, J., concurring in judgment) ("We have always held that federal courts, even on habeas, have an independent obligation to say what the law is.").

        C.   The Petitioner's Claims

           1.   Venue

The petitioner asserts that he was denied due process when he was tried in New York County because the prosecution failed to establish venue for twenty-six counts of the indictment.  (Pet. at 6).  The respondent contends that this claim is barred because the Appellate Division denied it on adequate and independent state-law grounds (Resp. Memo. at 37-38), and, in any event, it is without merit (Resp. Memo. 39-42).

Since the petitioner's claim can be easily disposed of on the merits, I will not address the question of procedural bar.  See Dunham v. Travis, 313 F.3d 724, 729-39 (2d Cir. 2002) (noting that "it is not the case 'that the procedural-bar issue must invariably be resolved first'" such as in cases where "'the [underlying issue] were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.'" (alteration in original) (quoting Lambrix v. Singletary, 520 U.S.

518, 525 (1997)).

"As a threshold matter, improper venue is not a valid claim for habeas relief because '[t]he application -- or misapplication -- of state subject matter jurisdiction rules raises no constitutional issues, due process or otherwise.'" <u>Powell v. Graham</u>, No. 10 CV 1961, 2013 WL 37565, at *14 (E.D.N.Y. Jan. 3, 2013) (alteration in original) (quoting <u>United States v. Kerley</u>, 416 F.3d 176, 182 (2d Cir 2005); <u>see also</u> <u>Glucksman v. Birns</u>, 398 F. Supp. 1343, 1350 (S.D.N.Y. 1975) (rejecting claim that improper venue resulted in deprivation of due process because it "involves solely the interpretation of a state statute to determine whether the trial court had jurisidction and raises no federal question cognizable in a habeas corpus proceeding."). Accordingly, "[w]here there is no constitutional issue, there is no basis for federal habeas relief." <u>Powell</u>, 2013 WL 37565, at *14 (citing <u>United States ex rel. Roche v. Scully</u>, 730 F.3d 739, 741 (2d Cir. 1984)). Therefore, this claim should be denied.

2. <u>Grand Jury</u>

The petitioner contends that the integrity of the grand jury proceeding was impaired because the prosecution introduced testimony about alleged prior criminal activity with which he was not charged. (Pet. at 7). The respondent argues that this claim is unexhausted because it was presented solely on state-law grounds. (Resp. Memo. at 42). The respondent also contends that this claim is not cognizable on federal habeas review. (Resp. Memo. at 42-43). Since this claim can also be readily disposed of

on the merits, I will not address the issue of exhaustion.  <u>See</u> <u>Bell v. Napoli</u>, No. 08 Civ. 9900, 2010 WL 8039333, at *26 (S.D.N.Y. Aug. 24, 2010) (bypassing exhaustion question pursuant to 28 U.S.C. § 2254(b)(2) "when it is clear that a petitioner's claim is meritless") (collecting cases).

"A jury conviction transforms any defect connected with the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." <u>Smith v. Hulihan</u>, No. 11 Civ. 2948, 2011 WL 4058764, at *10 (S.D.N.Y. Sept. 13, 2011); <u>accord</u> <u>Newton v. McAuliffe</u>, No. 09 Civ. 9818, 2010 WL 2541099, at *6 (S.D.N.Y. June 22, 2010); <u>see</u> <u>Lopez v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1980) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are <u>a</u> <u>fortiori</u> foreclosed in a collateral attack brought in federal court." (citing <u>United States v. Mechanik</u>, 475 U.S. 66, 70 (1986)); <u>Cadilla v. Johnson</u>, 119 F. Supp. 2d 366, 371-72 (S.D.N.Y. 2000) (holding claim that introduction of inadmissible hearsay in grand jury proceeding impaired integrity of proceeding not cognizable under federal habeas review because petitioner was convicted by jury). Since Mr. Hinds was convicted at trial of all counts in the indictment, any alleged error in the grand jury proceeding are rendered harmless.  Accordingly, this claim should be denied.

    3.  <u>Fourth Amendment</u>

Mr. Hinds argues that the search of his home violated his

Fourth Amendment rights because the affidavit in support of the search warrants failed to establish probable cause, and he was denied a "full and fair" opportunity to litigate this issue. (Pet. at 9). The petitioner has presented this claim in federal terms in state court (Pet. App. Br. at 59-71; 11/23/10 Letter Application), therefore this claim has been properly exhausted (Resp. Memo. at 32).

As a general rule, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (footnotes omitted); see Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002). However, federal habeas corpus remains available if the state failed to provide "corrective procedure" to redress the Fourth Amendment violation or if the state provided such process but the petitioner was precluded from utilizing it by reason of "an unconscionable breakdown" in that process. Cappellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc).

The petitioner cannot contend that New York failed to provide a corrective procedure, "as 'the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in [New York Criminal Procedure Law], as being facially adequate.'" Neal v. Yelich, No. 12 Civ. 3022, 2012 WL 6097659, at *2 (S.D.N.Y. Dec. 7, 2012) (alteration in original) (quoting Cappellan, 975 F.2d

at 70 n.1); see also Daily v. New York, 388 F. Supp. 2d 238, 249 (S.D.N.Y. 2005). Furthermore, there is nothing in the record to suggest there was an "unconscionable breakdown" in the corrective process of which the petitioner availed himself. The petitioner litigated his Fourth Amendment claim prior to trial: his trial counsel filed a motion to controvert the affidavit in support of the search warrants and suppress the seized evidence prior to trial, which was denied (Pet. App. Br. at 59-60; Resp. App. Br. at 91-92), and later sought to reargue this motion, which was also denied (Pet. App. Br. at 60 n.26; Resp. App. Br. at 92-93).[8] On direct appeal, the petitioner again raised his Fourth Amendment claim (Pet. App. Br. at 59-71), and the Appellate Division summarily denied it, Hinds, 77 A.D.3d at 431, 908 N.Y.S.2d at 400. See Cappellan, 975 F.2d at 72 (noting "summary affirmance rather than a written opinion" is not basis to "infer that an unconscionable breakdown occurred."). Accordingly, the "state corrective process was not only available, but was employed for [the petitioner's] Fourth Amendment claim[]." Munford v. Graham, No. 09 Civ. 7899, 2010 WL 644435, at *15 (S.D.N.Y. Feb. 24, 2010) (collecting cases).

Rather than arguing that he was denied an opportunity to litigate his Fourth Amendment claim in state court, the petitioner,

---

[8] While the record does not indicate whether a suppression hearing was held, "mere denial of an evidentiary hearing for insufficient allegations of facts is not an 'unconscionable breakdown' of such available procedures." Onega v. Ercole, No. 07 CV 1222, 2012 WL 2377789, at *8 (E.D.N.Y. June 25, 2012) (collecting cases).

in essence, contends that the state courts' probable cause determinations were wrong.   (Pet. at 9).   However, "'[m]ere disagreements with the state courts' determinations of the issue presented in [petitioner's] suppression motion' do not constitute an unconscionable breakdown of the state process." Munford, 2010 WL 644435, at *16 (second alteration in original) (quoting Welsh v. Artus, No. 04-CV-205S, 2007 WL 949652, at *20 (W.D.N.Y. March 29, 2007)).

"[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . . the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." Graham, 299 F.3d at 134.   Accordingly, the state court's decision is neither contrary to nor an unreasonable application of clearly established Federal law and this claim should be denied.

4.   Sentencing

The petitioner contends that the trial court imposed a sentence that retaliated against him for exercising his right to proceed to trial.   (Pet. at 11).   He claims that the prosecution offered him a sentence of 4 to 12 years provided that he plead guilty and that the court's imposition of a 10 to 25 year sentence after trial was retaliation for taking his case to trial.   (Pet. at 11).   The respondent concedes that Mr. Hinds has exhausted this claim.   (Resp. Memo. at 32).

The right to a jury trial is guaranteed under the Sixth Amendment and "a state may not penalize a person for exercising a

21

right guaranteed under the Constitution." Simmons v. Brown, No. 08 CV 1425, 2011 WL 2133844, at *19 (E.D.N.Y. May 26, 2011) (citing Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978)). Thus, "[a] sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial." Izaquirre v. Lee, 856 F. Supp. 2d 551, 572 (E.D.N.Y. 2012) (citing Wasman v. United States, 468 U.S. 559, 567-68 (1984)). "At the same time the Supreme Court has 'squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.'" Russ v. Greene, No. 04-CV-6079, 2009 WL 2958007, at * 11 (W.D.N.Y. Sept. 11, 2009) (quoting Corbitt v. New Jersey, 439 U.S. 212, 219 (1978)). Thus, "when a greater penalty is imposed after trial than was imposed after a [] guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." Alabama v. Smith, 490 U.S. 794, 801 (1989). Accordingly, the disparity between the sentence Mr. Hinds was offered prior to trial and the sentence he received after trial alone does not make out a claim of actual vindictiveness. See, e.g., McKeehan v. Zon, No. 05-CV-0454, 2009 WL 3429798, at *11 (W.D.N.Y. Oct. 20, 2009) (noting 12 year difference between pretrial plea offer and sentence imposed after jury trial does not alone demonstrate vindictiveness); Naranjo v. Filion, No. 02 Civ. 5449, 2003 WL 1900867, at *10 (S.D.N.Y. April 16, 2003) (disparity between pretrial offer of five to ten years and actual sentence of twenty-five to fifty years did not establish claim of actual

22

vindictiveness).

While at sentencing the court commented on the prosecution's pretrial plea offer, "the judge never stated or implied that the sentence [imposed] was based on [the petitioner's] refusal of the plea offer." Brown v. Donnelly, 371 F. Supp. 2d 332, 342 (W.D.N.Y. 2005); see Roundtree v. Kirpatrick, No. 11-CV-6188, 2012 WL 1413054, at *22 (W.D.N.Y. April 23, 2012) (judge's reference to pretrial plea offer does not demonstrate vindictiveness because judge never stated or implied sentence was based on petitioner's refusal of plea offer and was made solely in response to defense counsel's reference to pretrial plea offer). Rather in response to the petitioner's request that he be sentenced to what was offered by the prosecution prior to trial, the court surmised that the prosecution offered a "lenient" plea deal because:

> This was a matter in which the preparations for trial and the trial itself, I'm note [sic] quite sure what the correct word is, it was difficult, a number of witnesses, many from out of the jurisdiction, all of whom had to be scheduled and at least twice, more than twice because of the various conduct from the four shenanigans, which I call them, throughout the course of the trial which I won't rehash at this point.
>
> So that being the case, the [prosecution] came up with this [pretrial] offer which was, given the scope of the criminal activities, a lenient one, no[t] lenient perhaps than if this requires perhaps only a couple of witnesses who come down from oh, perhaps 34th Street, this is not what this was. So the suggestion that somehow or another four to twelve becomes the model for what the trial should be is I don't think correct . . . .

(Sent. Tr. at 22-23).

"[I]t is well settled that prosecutors may encourage guilty pleas by offering benefits as part of 'give-and-take negotiations.'" Herrera v. Artus, No. 06 CV 1715, 2007 WL 29392,

at *3 (E.D.N.Y. Jan. 4, 2007) (citing <u>Bordenkircher</u>, 434 U.S. 357, and <u>Corbitt</u>, 439 U.S. 212); <u>see also</u> <u>Gains v. Murray</u>, No. 03-CV0016A, 2008 WL 4890249, at *6 (W.D.N.Y. Nov. 12, 2008) ("'[A] state may encourage a guilty plea by offering substantial benefits in return for the plea[,]' such as 'the possibility or certainty . . . [not only of] a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty." (alteration in original) (quoting <u>Corbitt</u>, 439 U.S. at 219)). However, "[a] show of lenience to those who exhibit contribution by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those who elect to stand trial." <u>United States v. Araujo</u>, 539 F.2d 287, 292 (2d Cir. 1976) (internal quotation marks omitted).

Moreover, it is not inappropriate for the court to consider the conduct of the petitioner during trial in imposing a sentence. <u>See</u> <u>United States v. Curcio</u>, 608 F. Supp. 1346, 1359 (D. Conn. 1985) (noting that "during the trial the sentencing court had many opportunities to observe the conduct of both defendants and their persistent effort to cause a mistrial" and deliberately delay trial, which justified enhancing sentence).[9]  Likewise, it is not

---

[9] For example, during trial, the petitioner indicated that he was Muslim and refused to attend court on one of the Fridays. (Trial Tr. at 2207).  The court questioned the sincerity of Mr. Hinds' religious affiliation, noting that he has been inconsistent on this issue.  (Trial Tr. at 2208-14).  The petitioner also requested that the court delay charging the jury to allow him to attend morning prayer, which the court denied, again questioning the seriousness of Mr. Hinds' religious belief.  (Trial Tr. at 2784).  There were also several instances where Mr. St. Rose refused to appear in court because of alleged medical problems in an apparent attempt to delay the proceedings.  (Trial Tr. at 227-

improper for the court to have taken into consideration that Mr. Hinds' testimony in court was called into question by the jury's verdict.  See Roundtree, 2012 WL 1413054, at *22 (noting that "it is not unreasonable to conclude that the jury found that [the petitioner] had lied under oath, as the guilty verdict rendered could not possibly be reconciled with Petitioner's sworn testimony," and holding that this did not deprive petitioner of his constitutional rights); accord Curcio, 608 F. Supp. at 1359 (noting no due process violation for imposing greater sentence after trial when defendants took witness stand and apparently lied under oath as demonstrated by jury's guilty verdict).  Similarly, the trial court's comment that Mr. Hinds lied about his prior convictions at sentencing does not amount to a constitutional violation.  See Thomas v. Kuhlman, No. 99 CV 3737, 2003 WL 21294065, at *7 (E.D.N.Y. April 8, 2003) (observing that while imposition of additional five years for petitioner's false testimony about old conviction was unnecessarily punitive, "federal habeas courts cannot set aside state court sentences on the ground that they are unnecessarily punitive"); accord United States v. Shahid, 390 F. App'x 24, 27 (2d Cir. 2010) (holding district court committed no clear error for enhancing sentence because defendant lied at sentencing).

In sentencing the petitioner, the court also considered that "[a]n enormous number of people were victimized, [and] Mr. Hinds seems to show no feeling whatever [sic] for that particular issue"

---

29, 232-33, 344-45, 897-902, 1249-1252, 1256, 1303).

(Sent. Tr. at 24).   These are entirely appropriate sentencing considerations.  <u>See, e.g.</u>, <u>Williams v. Bradt</u>, No. 10-CV-0790, 2012 WL 566818, at *9 (W.D.N.Y. Feb. 21, 2012) (sentencing court properly considered petitioner's lack of remorse and failure to accept responsibility); <u>Harris v. Smith</u>, No. 06 Civ. 7824, 2011 WL 781128, at *9 (S.D.N.Y. Jan. 5, 2011) (sentencing court properly considered, among other things, letter from victim and severity of victim's injuries).   Accordingly, the state court's determination is neither contrary to nor an unreasonable application of clearly established federal and this claim should be denied.

Mr. Hinds contends, in the alternative, that his sentence was unduly harsh.   (Pet. at 11).   This claim is unexhausted.   The petitioner argued on direct appeal that his sentence should be reduced in the interest of justice, but never alluded to a single federal case or constitutional provision. (Pet. App. Br. at 74-75; 11/23/10 Letter Application).   Therefore, this claim was not "fairly presented" to the state court and is not exhausted.   <u>See</u> <u>Baide-Ferrero v. Ercole</u>, No. 06 Civ. 6961, 2010 WL 1257615, at *4 (S.D.N.Y. March 31, 2010).   Moreover, this claim can no longer be raised on collateral review; as such, it may be deemed exhausted, but is procedurally barred.   The petitioner has made no showing of cause and prejudice or actual innocence to excuse the procedural bar.

In any event, a claim that a sentence is excessive typically may not be raised as a grounds for habeas relief if the sentence is within the range prescribed by state law. <u>White v. Keane</u>, 969 F.2d

26

1381, 1383 (2d Cir. 1992); Mendez v. Graham, No. 11 CV 5492, 2012 WL 6594456, at *13-14 (E.D.N.Y. Dec. 18, 2012).  Mr. Hinds concedes that his sentence was within the statutory limit.

However, the mere fact that the sentence falls within the range authorized under state law does not entirely immunize it from scrutiny, for "no penalty is per se constitutional."  Solem v. Helm, 463 U.S. 277, 290 (1983); accord Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring).  A sentence may be so disproportionate to the crime for which the defendant is convicted to be a violation of the Eighth Amendment.  See Solem, 463 U.S. at 290-92; Harmelin, 501 U.S. at 997-98 (Kennedy, J., concurring).  But a sentence is not constitutionally infirm unless it is a misuse of the "broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes," or is an abuse of the sentencing court's discretion.  See Solem, 463 U.S. at 290.  In Solem, the Court set forth objective criteria by which to measure the proportionality of a criminal sentence; they include the gravity of the offense and the harshness of the penalty, the sentences imposed on other criminals in the same jurisdiction, and the sentences imposed for commission of the same crime in other jurisdictions.  Id. at 290-92.

Here, the sentence was not disproportionate.  The petitioner received an indeterminate sentence of 10 to 25 years imprisonment, which was later modified to 10 to 20 years, for a large scale identity theft and bank fraud scheme.  "The absolute magnitude of

27

the crime may be relevant," <u>Solem</u>, 463 U.S. at 293, in the proportionality analysis, and, according to the prosecution, this was "one of the highest dollar amount of identity theft case in the history of this state" (Sent. Tr. at 19).  Additionally, Mr. Hinds "has not presented any argument demonstrating that his sentence is disproportionate based on the same sentence being imposed for other crimes in New York or based on sentences in other jurisdictions for the same crime." <u>Flores v. Rivera</u>, No. 06 Civ. 13517, 2009 WL 1110578, at *20 (S.D.N.Y. April 23, 2009); <u>see also</u> <u>Diaz v. LeFevre</u>, 688 F. Supp. 945, 949-50 (S.D.N.Y. 1988); <u>Carter v. Henderson</u>, 602 F. Supp. 1186, 1188-89 (S.D.N.Y. 1985) (applying analytical framework of <u>Solem</u>).  Accordingly, the petitioner's excessive sentence claim should be rejected.

   5.   <u>Ineffective Assistance of Appellate Counsel</u>

Although Mr. Hinds has not sought to amend his petition to include the ineffective assistance of appellate counsel claim raised in his corram nobis motion, even if he had, this Court is barred from reviewing it because it remains unexhausted.  To comply with AEDPA's exhaustion requirement, a petitioner must have "'fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review).'" <u>Bierenbaum v. Graham</u>, 607 F.3d 36, 47 (2d Cir. 2010) (quoting <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2005)); <u>see also</u> 28 U.S.C. § 2254(c).  Mr. Hinds has not sought leave to appeal the Appellate Division's denial of his coram nobis motion to the New York Court of Appeals, and therefore this claim is unexhuasted.

28

See, e.g., <u>Hawkins v. Kirpatrick</u>, No. 11-CV-172, 2012 WL 5499631, at *10 (W.D.N.Y. Nov. 13, 2012); <u>Durden v. Green</u>, 492 F. Supp. 2d 414, 423 (S.D.N.Y. 2007).   Moreover, since the time to seek leave to appeal to the New York Court of Appeals has expired, this claim may be deemed exhausted but procedurally barred.   <u>Hawkins</u>, 2012 WL 5499631, at *10; <u>see</u> C.P.L. § 460.10(5)(a).   The petitioner has made no showing of cause and prejudice or actual innocence to overcome this procedural bar.   <u>Jones v. Murphy</u>, 694 F.3d 225, 247 ("'An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only be demonstrating "cause for the default and prejudice" or by demonstrating that he is "actually innocent" of the crime for which he was convicted.'" (quoting <u>Carvajal v. Artus</u>, 633 F.3d 95, 104 (2d Cir. 2011)); <u>Durden</u>, 492 F. Supp. 2d at 424.   Therefore, this claim may not be reviewed by a federal court, and it should be dismissed.

<u>Conclusion</u>

For the reasons above, I recommend that Mr. Hinds' application for a stay of these proceedings be denied as moot and that his petition for a writ of habeas corpus be denied.   Pursuant to 28 U.S.C § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.   Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura T. Swain, Room 755, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.

Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            March 11, 2013

Copies mailed this date to:

Curtis Hinds
06-A-6263
Woodbourne Correctional Facility
P.O. Box 500
Woodbourne, NY 12788

Alyson J. Gill, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271